MAR 23 2018

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CANDICE HINTON, individually, as personal representative of the ESTATE OF RODRIN HINTON, and as parent and natural guardian of her minor children, R.H. and CH and next of friend for I.H and K.H. | * <br> * <br> * | CIVIL ACTION NO. 18-912 <br><br> JURY TRIAL DEMANDED |
| Plaintiffs, | * | |
| V. | * | |
| SHERIFF ED GONZALES; in his official capacity; HARRIS COUNTY; AND JOHN DOE JAIL STAFFERS | * <br> * | |
| Defendants. | * | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:**

Plaintiffs' by and through their undersigned counsels, file this Original

Complaint against Defendants and allege as follows:

### I. INTRODUCTION

1.     This is a civil rights action under 42 U.S.C. § 1983 and Texas law

resulting from events that happened during the pre-trial detention of Rodrin Hinton

at the Harris County Jail in Houston, Texas.  The events that give rise to this

complaint began on March 24, 2016 and culminated in the death of Rodrin Hinton

by violating his rights under the Fourteenth and Eight Amendment to the United

1

States Constitution and under the laws of the State of Texas.

2. Defendants' unlawful actions include depriving Rodrin Hinton of needed medical attention, denying him adequate medical care, while ignoring his ongoing serious medical need, including his observable respiratory distress, failing to monitor him despite this severe and life-threatening medical condition, otherwise forcing him to endure needless pain and suffering, resulting his death.

## II. **JURSIDCTION AND VENUE**

3.      This Court has original subject matter jurisdiction over the plaintiffs' civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the plaintiffs' related state claims pursuant to 28 U.S.C. § 1367(a).

This action is brought pursuant to 42 U.S.C. §§ 1983, pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1988 Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, and 1343, and the aforementioned statutory and constitutional provisions.

42 USC § 1983 - Civil action for deprivation of rights:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1985 : US Code - Section 1985: Conspiracy to interfere with civil rights:  (3) Depriving persons of rights or privileges: If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the

party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

       4.    This Court has personal jurisdiction over each of the named defendants because they either (1) reside in this judicial district, or (2) they have sufficient minimum contacts in the State of Texas, and the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

       5.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391(3) because all defendants are subject to this Court's personal jurisdiction in this action.

## III. PARTIES

**A.**    <u>**Plaintiffs**</u>

       6.    a.    Plaintiff Candice Hinton is a United States Citizen and resident of Houston, Harris County, Texas. She is the surviving spouse of the decedent, Rodrin Hinton. She is also bringing this action individually and as the personal representative of the Estate of Rodrin Hinton, and the mother of the decedent's two minor children- R.H. and C.H. each of whom are residents of Houston, Texas and live with their mother.

           b.    Plaintiffs I.H. and K.H., minors, are wards of the Court in the State of Alaska.

**B.**   **Defendants**

7.     Defendant Harris County is a governmental entity and a political subdivision of the State of Texas and is a "person" for purposes of 42 U.S.C. § 1983. Harris County is responsible for operating the Harris County Jail in Houston, Texas. The Harris County Jail houses pretrial detainees who are awaiting trial in Harris County, Texas. All pretrial detainees confined at the Harris County Jail are entitled to constitutional protections under the Fourteenth and Eight Amendments to the United States Constitution, including but not limited to the right to constitutionally-adequate medical care and the right to be free from constitutionally protected unreasonable risk of injury and harm. Harris County may be served via its County Judge, the Honorable Ed Emmett at 1001 Preston, Houston, Texas 77002.

8.     Defendant Ed Gonzales, is a defendant and current Sheriff of Harris County, Texas.  He may be served in his Official Capacity of the Sheriff of Harris County with process at 1200 Baker St. Houston, Texas 77002.  Ron Hickman was Sheriff of Harris County at the time the incident complained occurred.

Defendant Ed Gonzales, in his individual and official capacity as Sheriff of Harris County Sheriff's Office, is an adult citizen of the State of Texas and domiciled in the Southern District of Texas.  At all times described herein, the Sheriff of Harris County was responsible for the hiring, training, supervision,

5

discipline, and control of the deputies under his command, as well as medical personnel. He was responsible for all actions of HSCO staff.

He was also responsible for the supervision, administration, policies, practices, customs, and operations of the Harris County Sheriff's Office and its correctional facilities. He was and is a final policy maker. He is liable both directly and vicariously for the actions complained of herein

9. Unknown Unidentified Defendant(s) John Doe(s) Jail Staffer(s) are citizens of the United States who reside in Harris and/or contiguous counties in Texas. These defendants were employees of the Harris County Sheriff's Office who were responsible for pretrial detainees in the Harris County Jail and at all times were acting under color of law.

## IV. FACTUAL ALLEGATIONS

### A. Facts

10. Rodrin Hinton was a pretrial detainee who had been in custody in the Harris County Jail on 1200 Baker in Houston, Texas due a misdemeanor family violence charge. He was arrested on March 14, 2016 and remained in custody until the time of his death due to of inability to make bail bond.

11. On Thursday, March 24, 2016, pretrial detainee, Rodrin Hinton was involved in an incident with another inmate. At approximately 4:43 PM, Floor Rovers responded to the disturbance. Upon arriving, found the inmates had stopped fighting (Rodrin Hinton was sitting on the dayroom table). While waiting for an

elevator, Detainee Rodrin Hinton advised he was having difficulty breathing, he was given water and advised to calm down. (The on-scene sergeant indicates he did not observe injury to either detainees). Health Services personnel assert that although Rodrin Hinton complained that he was having difficulty breathing, he refused medical treatment. He was medically diagnosed by physical observation of the jail staffer and was subsequently returned to a holdover on the 5th floor jail, pending completion of an offense report. He did not receive any medical attention from this time until his death. At approximately 5:05 PM, Detainee Rodrin Hinton was observed by a detention officer lying on the floor of the holdover unable to breathe and unresponsive. The detention officer notified the 5th floor supervisor and when they entered the holding cell discovered detainee Hinton still unresponsive and not breathing. CPR was then unsuccessfully attempted and medical assistance summoned. Detainee Hinton was transported to the clinic with CPR in progress. At approximately 5:20 PM, the Houston Fire Department (HFD) was dispatched, arriving at approximately 5:29 PM. At approximately 5:59 PM, HFD transported Detainee Hinton to St Joseph Hospital from the 1200 Baker Street Facility. At approximately 6:25 PM, an attending physician confirmed Rodrin Hinton deceased.

12.    Rodrin Hinton was a pretrial detainee and any criminal charges against him would have ultimately been resolved in court and Harris County

maintained "jurisdictional situs" over Rodrin Hinton at all times during his pretrial detention until the day of his death.

13. All acts and omissions committed by each of the individual defendants were committed with intent, malice, and/or with reckless disregard for Rodrin Hinton's federal constitutional rights. Moreover, the individual defendants either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that their conduct would naturally and probably result in injury or death and, nevertheless, continued the conduct with malice or in reckless disregard of the consequences of their actions.

14.    There is a well - documented pattern and practice at HCSO, records maintained by various departments of the Federal Government (e.g. Bureau of Justice Statistics – number of local jail inmate deaths)  and Office of the Attorney General (e.g. Custodial Death Reports), which have chronicled the history and pattern of inmate deaths, resulting from inadequate staffing and failing to monitor the tiers housing inmates, thereby permitting and in fact creating unconstitutional risks to inmate safety including but not limited to sexual assaults and deaths while in the Harris County jail.

15.    There is further a pattern and practice of failing to adequately train and supervise jail staffers regarding detainees housed in HCSO facilities.

16.    There is also a pattern and practice of failing to adhere to policies and

8

procedures – both State and Federally mandated.   There is also a pattern and practice of failing to monitor, supervise, and discipline HCSO deputies' for failure to follow policies and procedures.

17.   The defendants, particularly the then acting Sheriff, and Unidentified Defendants, knew, must have known, or should have known of these unconstitutional patterns and practices.   There are numerous tragic examples of inmates under these defendants' care, custody, and control being subjected to unconstitutional risks of harm, which frequently results in severe injury to the inmate or even death, as documented by the OAG for the period of 2013 – 2017 to be not less than 160 custodial inmate deaths.

a.   As documented in the Houston Press, Aug. 1, 2016, '[i]n the decade between 2005 and 2015, 199 people died in the custody of the Harris County Sheriff's Office —and of those who died in the county jail, about 85 percent had not yet been convicted of a crime.'

18.   a.   The pattern is an inmate, being held in pre-trial confinement, is the recipient of some blunt force trauma or inmate trauma/assault, the injury is not timely noted/treated or HCSO relies upon undocumented inmate declination/refusal for medical treatment, is discovered in the jail cell unresponsive and in distress, who either has died, is dying, dies in route to treatment, or arrives at treatment and is subsequently pronounced dead.

    b.    The events occur while the inmate is left in his tier unattended and unmonitored for a lengthy period of time.  Indeed, the facts of this case echo the infamous pattern herein stated.

    c.    At the time of the detention of detainee Rodrin Hinton by HCSO, the defendants knew, must have known or should have known of serious deficiencies in the policies, practices and procedures at the jail related to staffing and training, failing to monitor, supervise, and discipline HCSO deputies for failure to follow policies and procedures regarding the inmates housed in HCSO facilities.

19.    Defendants were also aware of the inadequate staffing and inadequate training and supervision of prisoners. Despite their knowledge of these serious deficiencies, the defendants failed to make necessary changes to policies, procedures, training, supervision or staffing or to intervene to see that detainee Rodrin Hinton and others in their custody were provided adequate security supervision and timely treatment for injury and needs.

20.    On information and belief, defendants herein have been involved in other incidents involving serious deficiencies in the policies, practices and procedures at the jail related to staffing and training, failing to monitor, supervise, and discipline for HCSO deputies' failure to follow policies and procedures regarding the inmates housed in HCSO facilities, which resulted in serious harm, injury, suffering and/or death to inmates in their care. Yet few of these defendants

and/or other HCSO staff who were similarly derelict in their duties, were appropriately disciplined or held accountable for their acts or omissions.

a.     In addition, those responsible for training and supervising HCSO staff have failed in their own responsibilities to provide adequate care to detainees and have not themselves been subject to disciplinary action or accountability for failing their supervisory and/or training responsibilities.

21.     There have been numerous reports placing all defendants on notice regarding the unconstitutional conditions at the jail.  To wit, June 4, 2009, the U. S. Department of Justice found HCSO jail deficient, as follows:

> "At the same time, however, we also conclude that certain conditions at the Jail violate the constitutional rights of detainees.  Indeed, the number of inmates deaths related to inadequate medical care, described below, is alarming.  As detailed below, we find that the Jail fails to provide detainees with adequate:  (1) medical care; (2) mental health care; (3) protection from serious physical harm; and (4) protection from life safety hazards."

### V. FIRST CAUSE OF ACTION – 42 U.S.C. § 1983  EIGHT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

22.     All preceding paragraphs are incorporated in this section by reference.

23.     Rodrin Hinton was deprived of his federal and constitutional rights by persons acting under color of law.

24.     Harris County maintained a policy, custom and usage that allowed for a deliberate indifference to a serious medical need of Rodrin Hinton in violation of his Eight Amendment constitutional right.

25.    Rodrin Hinton, after having been assaulted by an inmate, made it known to John Doe Jail Staffers that he was having difficulty breathing, which was serious.

26.    Rather than addressing his medical need, Rodrin Hinton was placed in a holdover cell while John Doe Jail Staffer commenced with doing paper work regarding an incident report.

27.    This was a deliberate indifference to Rodrin Hinton's medical situation regarding his difficulty in breathing.

28.    While in the care of John Doe Jail Staffer, Rodrin Hinton was given water and told to calm down rather than medical attention.

29.    John Doe Jail Staffer had subjective knowledge of the risk of serious harm to Rodrin Hinton but disregarded that risk, made a medical diagnosis based on an outward appearance and placed Rodrin Hinton in a holdover cell where within in thirty minutes Rodrin Hinton was lying on the cell floor not able to breathe.

30.    This was a deliberate indifference to a serious medical need and more than an inadvertent failure to provide medical care.

31.    These acts and omissions and failure to provide medical assistance and attention to a serious medical breathing need give rise to an Eight Amendment claim under the United States Constitution.

## VI. SECOND CAUSE OF ACTION – 42 U.S.C. § 1983  FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – PATTERN, PRACTICE AND/OR CUSTOM

32.    All preceding paragraphs are incorporated in this section by reference.

33.    Defendants – Defendant Sheriff of Harris County the date this incident , and Unidentified Defendants, acting individually and collectively, established, condoned, ratified, and encouraged customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of the deceased, as alleged herein, and the damages and injuries described herein, in violation of the Fourth and Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. 1983.

34.    They did so with deliberate indifference to the rights of detainees at HCSO facilities.

35.    These written and/or unwritten policies, customs, patterns and practices include but are not limited:

1.    Inadequate staffing of and failure to monitor tiers where inmates are housed;

2.    Inadequate, improper, and unreasonable screening, treatment, and monitoring of inmates after having been assaulted by another inmate suffering serious medial injury and/or complaining of medical injury and/or complications while in custody;

3.    Inadequate and unreasonable sick call, referral, and follow-up procedures relative to the serious medical needs of persons in custody;

4.      Inadequate and unreasonable on-site medical staffing and coverage;

5.      Hiring of inadequately trained and inexperienced persons to screen and monitor persons in the custody of HCSO;

6.      Hiring of inadequately trained persons to render medical treatment to persons in custody;

7.      Inadequate training, supervision, and discipline of medical personnel responsible for screening, diagnosis, and treatment of medical conditions at HCSO jail;

8.      Inadequate hiring, training, supervision, and discipline of deputies and supervisors responsible for the observation and monitoring of detainees and the identification and communication of problems and/or serious medical needs of persons in custody to appropriate medical personnel;

9.      A pattern and practice of ignoring detainees' requests and needs for medical psychiatric   treatment, including   the   need   for   proper medications, and/or of providing unreasonable and patently insufficient treatment for detainees' conditions, and/or failing to properly monitor detainees who are treated, causing serious pain, suffering, injury, and/or death;

10.    Inadequate quality control policies, procedures, and practices; inadequate critical incident review; inadequate mortality reviews; and inadequate identification and correction of serious deficiencies in policy and practices affecting the delivery and quality of medical services.

36.    In addition to the injuries sustained by the pretrial detainee Rodrin Hinton herein the deliberate indifference of Defendants – the Sheriff , and Unidentified Defendants, in their official capacities as Sheriff of HCSO, the HSCO Compliance Director, and the medical provider for HCSO Jail, respectively, to the serious medical needs of detainees under their custody and control has resulted in numerous other instances of detainees suffering serious and oftentimes fatal injuries and illnesses.

37.    At all times pertinent herein the defendants acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights to life and safety of the deceased, Rodrin Hinton.

38.    The actions of the defendants were malicious, willful, wanton and reckless.

39.    Plaintiff further alleges that such acts and omissions as alleged herein were the proximate cause and cause in fact of the death of Rodrin Hinton, the injuries suffered by the plaintiffs, and the damages incurred.

## VII. THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

40.    All preceding paragraphs are incorporated in this section by reference.

41.    Because the test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, …its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  When deadly force is involved, the Supreme Court has held that officers cannot resort to deadly force unless they "have probable cause…to believe that the suspect [has committed a felony and] poses a threat to the safety of the officers or a danger to the community if left at large. Tennessee v. Garner, 471 U.S. 1, 6 , 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) Clearly, "[a] police officer may not seize an unarmed nondangerous suspect by shooting him dead." Garner, Id. pg. 11.

42.    Since November 10, 2016, it has been known that in Harris County Jail "Inmates die there at a higher rate per capita than most other jails in the nation, according to a Huffington Post analysis of death data from July 13, 2015, to July 13, 2016."

43.     Defendants are liable under 42 U.S.C. §1983 because they were acting under color of state law when they deprived Rodrin Hinton of constitutional rights provided by federal law.

44.     Rodrin Hinton had a Fourteenth Amendment right to due process.

45.     Rodrin Hinton had a right under the Fourth and Fourteenth Amendments to be free from unconstitutional taking of his life.

46.     Defendants and their co-conspirators acted with deliberate indifference to Rodrin Hinton's right to be medically diagnosed and proper medical treatment to prevent deprivation of life.

47. Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the right to medical treatment.

48.     As someone not convicted of a criminal offense or rule violation of any kind, Rodrin Hinton had a right under the Fourteenth Amendment to more considerate, dignified, safe, and less restrictive, treatment than that utilized by the Harris County Sheriff for warehousing pretrial detainees and convicted criminals.

49.     The Defendants and their co-conspirators treated Rodrin Hinton with deliberate indifference to his right to considerate, dignified, safe, and less restrictive treatment.

50.    Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the need to provide considerate, dignified, safe, and less restrictive treatment to material witnesses and other non-accused individuals who are being held in the custody of the Sheriff.

51.    Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights also resulted from a failure to train, supervise, and/or discipline in the need to provide considerate, dignified, safe, and less restricted treatment to witnesses and other non-accused individuals who are being held in the custody of the Sheriff.

52.    Rodrin Hinton had the need for medical treatment and care, including the need for living conditions conducive to such treatment and care.

53.    Rodrin Hinton had a right under the Fourteenth Amendment to medical treatment and care, including the need for living conditions conducive to such treatment and care.

54.    The Defendants and their co-conspirators treated Rodrin Hinton with deliberate indifference to his right to medical treatment and care, including the need for living conditions conducive to such treatment and care.

55. Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights resulted from a policy, pattern, custom and/or practice of

deliberate indifference to the serious medical and psychological needs of inmates, including the need to provide living conditions conducive to treating and caring for inmates with medical complications.

56. Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees in the safe and humane handling of medically ill inmates experiencing life threatening illness.

57.    Rodrin Hinton had a right under the Fourteenth Amendment to be protected from violent inmates while confined in the Harris County Jail.

58. The Defendants and their co-conspirators treated Rodrin Hinton with deliberate indifference to his need to be protected from violent inmates.

59. Defendants' and their co-conspirators' violations of Rodrin Hinton's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the need to protect vulnerable inmates from violent inmates.

60. Defendants' and their co-conspirators violations of Rodrin Hinton's constitutional rights resulted from a failure to train, supervise, and/or discipline jail employees in the need to protect vulnerable inmates from violent inmates.

## VIII. JURY DEMAND

61.    Plaintiffs' hereby request a trial by jury

## IX. ATTORNEY FEES

62.     Plaintiffs are entitled to recover attorneys' fees and costs under 42 U.S.C. §§1983 and 1988 and to recover costs and attorney fees for prosecuting this case for violation of constitutional rights under the United States Constitution of America.

## X.     PRAYER     FOR     RELIEF.

WHEREFORE, Plaintiffs request that the Court:

a.     Enter judgment awarding all compensatory and punitive damages for Plaintiffs against the Defendants, jointly and severally;

b.     Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs and all litigation expenses, including expert fees pursuant to federal and state law, as noted against the Defendants;

c.     Award pre- and post-judgment interest;

d.     Award punitive damages against all individually-named Defendants and for Plaintiff.

e.     Award costs of court; and

f.     Grant such other and further relief as appears reasonable and just, to which Plaintiffs show they are justly entitled both legal and equitable.

RESPECTFULLY SUBMITTED,

/s/ Otha T. Carpenter

OTHA T. CARPENTER, ESQ.
ATTORNEY AT LAW
4606 FM 1960 Ste 400
Houston, TX 77069
713-227-2833 Office
281-315-8863 Fax
SBN: 03847500
Attorney for Plaintiffs
saxofpraise@aol.com


/s/ Michael A. Davenport

MICHAEL A. DAVENPORT
DAVENPORT LAW OFFICE
4606 FM 1960 Ste 400
HOUSTON, TX 77069
281-586-2208
281-315-8863 Fax
SBN: 05418300
Attorneys at Law
davenportlawoffices@comcast.net


/s/ Jimmie L. J. Brown, Jr.

JIMMIE L. J. BROWN, JR.
965 Pinemont Dr. Ste 400
Houston, TX 77018
713-419-1021
713-583-1352 Fax
SBN: 03141210
Attorney for Plaintiffs
lawserv@sbcglobal.net