**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CANDICE HINTON, individually, as** | § | |
| **personal representative of the ESTATE** | § | |
| **OF RODRIN HINTON, and as parent** | § | |
| **and natural guardian of her minor** | § | |
| **children, R.H. and C.H. and next of** | § | **CIVIL ACTION NO. 4:18-cv-912** |
| **friend for I.H. and K.H.** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SHERIFF ED GONZALEZ, in his** | § | |
| **official capacity, HARRIS COUNTY** | § | **JURY TRIAL DEMANDED** |
| **and JOHN DOE JAIL STAFFERS** | § | |
| *Defendants.* | § | |

**DEFENDANTS HARRIS COUNTY AND SHERIFF ED GONZALEZ'
MOTION FOR SUMMARY JUDGMENT**

**LAURA BECKMAN HEDGE**
Assistant County Attorney
**Attorney-in-Charge**
Texas Bar No. 00790288
Southern District of Texas No. 23243
HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5137
Facsimile: (713) 755-8924
Email: Laura.Hedge@cao.hctx.net

**OF COUNSEL:**

VINCE RYAN
Harris County Attorney
**COUNSEL FOR DEFENDANTS
HARRIS COUNTY & SHERIFF ED
GONZALEZ**

August 24, 2018

## **TABLE OF CONTENTS**

Table of Contents.................................................................................................ii

Table of Authorities...........................................................................................iv

Summary of the Argument ................................................................................ 1

Nature and Stage of the Proceedings................................................................ 3

Factual Background ........................................................................................... 4

Legal Standard................................................................................................. 10

Argument ......................................................................................................... 11

      1.     Plaintiffs have no claims against Sheriff Ed Gonzalez ............................... 11

           a.     No individual claim.......................................................... 11

           b.     No official capacity claim ............................................... 12

      2.     Plaintiffs have no claims against Harris County ........................................ 13

           a.     No conspiracy claims under § 1985 ................................ 13

           b.     No claims under § 1983 – the relevant case law .............. 15

           c.     No persistent widespread pattern or practice or custom ................. 19

           d.     No facts or evidence of malicious, willful, wanton or reckless conduct ......................................................... 25

           e.     No § 1983 claim that shows deliberate indifference to a serious medical need........................................... 25

Conclusion & Request for Relief ..................................................................... 30

Certificate of Service ....................................................................................... 32

## TABLE OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | State's March 11, 2016 complaint for the felony charge of Assault, Family Violence, 2nd Offender |
| 2 | September 8, 2015 Judgment of Conviction |
| 3 | September 8, 2016 Magistrate's Order For Emergency Protection |
| 4 | HCSO Incident Report No. 16-47531 |
| 5 | Audio interviews of witnesses: Jordan Alvarado; Alec Casey; Nurse Amanda Cooper; Dorian Jones; Jose Miramontes; Antonio Morones Michael Persons; Brian Ray; Nerlin Rodriguez; Patrick Smith; Michael Stritz; William Webb & Donald Wilson |
| 6 | Detention Command-Inmate Offense Report 2015-38257 |
| 7 | Current Disciplinary History |
| 8 | Sworn statement of Detention Officer Alejandro Jimenez |
| 9 | Sworn statement of Detention Officer Elvia Guzman |
| 10 | Sworn statement of Detention Officer Brandon Morehouse |
| 11 | HCSO Triage Medical record dated 3/24/16 by Nurse Amanda Cooper |
| 12 | Hinton's Refusal of Medical Treatment |
| 13 | Declaration of Brandon Morehouse |
| 14 | Executive Summary |
| 15 | Autopsy Report, Case No. ML16-1135 |
| 16 | Declaration of Dr. Marcus Guice |

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 206 S.Ct. 2505 (1986) .................................................................. 10

*Angel v. City of Fairfield, Tex.*,
    793 F.2d 737 (5th Cir. 1986) .............................................................................. 16

*Augustine v. Doe*,
    740 F.2d 322 (5th Cir. 1984) .............................................................................. 15

*Banuelos v. McFarland*,
    41 F.3d 232 (5th Cir. 1995) ................................................................................ 30

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
    520 U.S. 397, 407 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ........................................ 18

*Bennett v. City of Slidell*,
    735 F.2d 861 (5th Cir. 1984) .............................................................................. 17

*Blessing v. Freestone*, ............................................................................................ 15
    520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)

*Bray v. Alexandria Women's Health Clinic*,
    506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) ........................................... 13

*Brown v. United States*,
    653 F.2d 196 (5th Cir. 1981) .............................................................................. 17

*Bryan v. City of Madison*,
    213 F.3d 267 (5th Cir.2000), *cert. denied*,
    531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001) ...................................... 14

*Campbell v. City of San Antonio*,
    43 F.3d 973 (5th Cir. 1995) ................................................................................ 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548 (1986) .................................................................. 10

*City of Canton, Ohio v. Harris*,
    489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ................................. 18, 19

*Colle v. Brazos Cnty, Tex.*,
    981 F.2d 237 (5th Cir. 1993) ................................................................. 17

*Conner v. Travis Cnty,*
    209 F.3d 794 (5th Cir. 2000) ................................................................. 23

*Connick v. Thompson*,
    -- U.S. --, 131 S. Ct. 1350, 179 L.Ed.2d 417 (2011) ............................................. 22

*Daniels v. Williams*,
    474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ............................... 15, 16, 29

*Davidson v. Cannon*,
    474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) .......................................... 16

*Domino v. Tex. Dep't of Criminal Justice*,
    239 F.3d 752 (5th Cir. 2001) ............................................................. 27, 29

*Ducket v. City of Cedar Park, Tex.*,
    950 F.2d 272 (5th Cir. 1992) ................................................................. 10

*Duffie v. United States*,
    600 F.3d 362 (5th Cir.), *cert. denied*, --- U.S. ---,
    131 S.Ct. 355, 178 L.Ed.2d 149 (2010) ................................................ 19

*Easter v. Powell*,
    467 F.3d 459 (5th Cir. 2006) ................................................................. 28

*Elliott v. Perez*,
    751 F.2d 1472 (5th Cir. 1985) ............................................................... 16

*Estelle v. Gamble*,
    429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ...................................... 16, 29

*Farmer v. Brennan*,
    511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ................................ 16, 29

*Fee v. Herndon*,
    900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908,
    111 S. Ct. 279 (1990) ......................................................................... 16

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992) ...................... 16

*Gibbs v. Grimmette*,
    254 F.3d 545 (5th Cir. 2001), *cert. denied*, 534 U.S. 1136,
    122 S.Ct. 1083, 151 L.Ed.2d 983 (2002) ........................................................ 28, 30

*Gobert v. Caldwell,*
    463 F.3d 339 (5th Cir. 2006) ........................................................................ 27, 29

*Griffin v. Breckenridge*,
    403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) ......................................... 13, 14

*Hare v. City of Corinth, Miss.*,
    74 F.3d 633 (5th Cir. 1996) ........................................................................... 19, 29

*Harris v. Hegman*,
    198 F.3d 153 (5th Cir. 1999) ............................................................................... 29

*Herrera v. Millsap*,
    862 F.2d 1157 (5th Cir. 1989) ............................................................................. 16

*Hilliard v. Ferguson*,
    30 F.3d 649 (5th Cir. 1994) ................................................................................ 14

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ............................................................................... 14

*Huffman v. Cty. of Los Angeles*,
    147 F.3d 1054 (9th Cir. 1998) ............................................................................. 18

*Jacquez v. Procunier*,
    801 F.2d 789 (5th Cir. 1986) ............................................................................... 16

*James v. Harris Cnty*,
    577 F.3d 612 (5th Cir. 2009) ............................................................................... 17

*Johnson v. Moore*,
    958 F.2d 92 (5th Cir. 1992) ................................................................................ 17

*Karim--Panahi v. Los Angeles Police Dept.*,
    839 F.2d 621 (9th Cir. 1988) ............................................................................... 14

*Kentucky v. Graham*,
    473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ...................................... 3, 12

*Kitchen v. Dallas Cnty., Tex.*,
    759 F.3d 468 (5th Cir. 2014) ................................................................... 22

*Kneipp v. Tedder*,
    95 F.3d 1199 (3rd Cir. 1996) .................................................................. 18

*Lacy v. Shaw*,
    357 F. App'x 607 (5th Cir. 2009) ......................................................... 28

*Leffall v. Dallas Indep. Sch. Dist.*,
    28 F.3d 521 (5th Cir. 1994) ................................................................... 18

*Matsushita Electric Indust. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348 (1986) ................................................... 10

*Mayweather v. Foti*,
    958 F.2d 91 (5th Cir. 1992) ................................................................... 30

*Meadowbriar Home for Children, Inc. v. Gunn*,
    81 F.3d 521 (5th Cir. 1996) ................................................................... 18

*Mendoza v. Lynaugh*,
    989 F.2d 191 (5th Cir. 1993) ........................................................... 28, 29

*Monell v. Dept. of Soc. Servs. of City of New York*,
    436 U.S. 658, 98 S.Ct. 2018 (1978) .................................... 12, 16, 17, 27

*Newberry v. East Tex. State Univ.*,
    161 F.3d 276 (5th Cir.1998) .................................................................. 14

*Norton v. Dimazana*,
    122 F.3d 286 (5th Cir. 1997) ........................................................... 28, 30

*Pineda v. City of Houston*,
    124 F.Supp.2d 1057 (S.D. Tex. 2000).................................................. 23

*Piotrowski v. City of Houston*,
    51 F.3d 512 (5th Cir. 1995) ................................................................... 18

vii

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) ................................................................ 19

*Rheuark v. Dallas County, Tex.*,
   450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981) .......................... 18

*Rheuark v. Shaw*,
   628 F. 2d 297 (5th Cir. 1980), *cert. denied sub. nom.*
   *Rheuark v. Dallas County, Tex.*,450 U.S. 931, 101 S.Ct. 1392,
   67 L.Ed.2d 365 (1981)............................................................................ 18

*Roe v. Abortion Abolition Soc'y*,
   811 F.2d 931 (5th Cir.), *cert. denied*, 484 U.S. 848,
   108 S.Ct. 145, 98 L.Ed.2d 101 (1987) .................................................. 14

*Schultea v. Wood*,
   47 F.3d 1427 (5th Cir. 1995) ................................................................ 16

*Scott v. Moore*,
   114 F.3d 51 (5th Cir. 1997) .................................................................. 28

*Simmons v. McElveen*,
   846 F.2d 337 (5th Cir. 1988) ................................................................ 16

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998), *cert. dism'd,* 526 U.S. 1083,
   119 S.Ct. 1493, 143 L.Ed.2d 575 (1999) .............................................. 19

*Spears v. McCotter*,
   766 F.2d 179 (5th Cir. 1985) ........................................................ 28, 30

*Spiller v. City of Texas City, Police Dep't.*,
   130 F.3d 162 (5th Cir. 1997) ................................................................ 18

*Stewart v. Murphy*,
   174 F.3d 530 (5th Cir. 1999) ........................................................ 28, 30

*Thompson v. Upshur Cnty, TX*,
   245 F. 3d 447 (5th Cir. 2001) .............................................................. 22

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117,
   117 S. Ct. 1249, 137 L.Ed.2d 330 (1997) ............................................ 18

*Varnado v. Lynaugh*,
    920 F.2d 320 (5th Cir. 1991) ................................................................. 30

*Wagner v. Bay City*,
    227 F.3d 316 (5th Cir. 2000) ................................................................. 29

*Walker v. Butler*,
    967 F.2d 176 5 th Cir. 1992) ................................................................. 29

*Wallace v. Texas Tech University*,
    80 F.3d 1042 (5th Cir. 1996) ................................................................. 19

*Webster v. City of Houston*,
    735 F.2d 838, *reh'g on other grounds*, 739 F. 2d 993 (5th Cir. 1984) ................ 17

*Wesson v. Oglesby*,
    910 F.2d 278 (5th Cir. 1990) ............................................................ 28, 29

*Wilson v. Seiter*,
    501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ......................... 28

*Worsham v. City of Pasadena*,
    881 F.2d 1336 (5th Cir. 1989) ............................................................... 16

*Young v. Gray*,
    560 F.2d 201 (5th Cir. 1977) ................................................................. 28

*Youngberg v. Romeo*,
    457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) ........................... 29

**STATUTES**

42 U.S.C. § 1983 .............................................................................*passim*

**RULES**

Fed. R. Civ. P. 56 ................................................................................ 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CANDICE HINTON, individually, as** | § | |
| **personal representative of the ESTATE** | § | |
| **OF RODRIN HINTON, and as parent** | § | |
| **and natural guardian of her minor** | § | |
| **children, R.H. and C.H. and next of** | § | **CIVIL ACTION NO. 4:18-cv-912** |
| **friend for I.H. and K.H.** | § | |
|   *Plaintiffs,* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SHERIFF ED GONZALES, in his** | § | |
| **official capacity, HARRIS COUNTY** | § | **JURY TRIAL DEMANDED** |
| **and JOHN DOE JAIL STAFFERS** | § | |
|   *Defendants.* | § | |
| | § | |

## DEFENDANTS HARRIS COUNTY AND SHERIFF ED GONZALEZ' MOTION FOR SUMMARY JUDGMENT

To the Honorable United States District Judge Lynn N. Hughes:

Defendants Harris County and Sheriff Ed Gonzalez move for summary judgment on all of Plaintiffs' claims and theories of recovery against them, respectfully showing the Court the following:

### Summary of the Argument

Rodrin Hinton died in the Harris County jail of unknown causes following his attack of a fellow inmate and refusing medical treatment.  Harris County is entitled to summary judgment because there is no evidence Harris County was deliberately indifferent to Rodrin Hinton's medical needs.  To the contrary, Harris County jail and medical staff provided Hinton with access to medical care in accordance with their custom, policy, training and

1

procedures.  To wit, after starting and engaging in a fight, jail staff took Hinton to the medical clinic.  Along the way, jail staff allowed him to rest in the hallway, rest in the elevator, and provided him with a drink of water when he requested it.  After arriving at the medical clinic, he refused medical treatment to the nurse that offered it to him.  He returned to his cell and did not tell jail staff he needed to return to the clinic or seek any medical assistance.  He was not exhibiting signs or symptoms that he was suffering from a serious medical condition.  Within minutes after he was in his jail cell, he became unresponsive and CPR was immediately initiated and medical personnel responded and provided additional medical treatment.  Hinton later died at a hospital.  Plaintiffs further cannot prove the actions of Harris County or its employees were malicious, willful, wanton and reckless.

Plaintiffs cannot prove there was a policy, custom or practice that was the moving force behind a constitutional violation.  There was no constitutional violation.  To the contrary, Officer Morehouse was accommodating to the requests made by Hinton on his way to the medical clinic and Nurse Cooper asked him if he wanted to see a doctor.

Further, Plaintiffs cannot prove there was a "conspiracy" to deprive Hinton of his constitutional rights.  The complaint is devoid of any facts that would support a race-based conspiracy, including failing to identify who the alleged conspirators were, how they engaged in a conspiracy and what they conspired to do.

Finally, Plaintiffs have no claim against Sheriff Ed Gonzalez in either an individual or official capacity.  Any individual capacity claim was disclaimed at the July 31, 2018

pre-trial conference as indicated in the Court's Order [Doc. 16].[1] The official capacity claim is redundant of the suit against Harris County and therefore is subject to dismissal.[2]

## Nature and Stage of the Proceeding

This case arises out of the March 24, 2016 death of Rodrin Hinton ("Hinton") while he was incarcerated in the Harris County jail. His wife, Candice Hinton, filed this lawsuit on March 23, 2018, bringing individual claims and as personal representative of Hinton's estate, as parent and natural guardian of her and Hinton's minor children, R.H., C.H., and as next of friend for I.H. and K.H., Hinton's alleged minor children that are wards of the state of Alaska.[3]

Plaintiffs bring a civil rights action under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution claiming Hinton was deprived of and given inadequate medical treatment. Plaintiffs further allege under 42 U.S.C. § 1985 there was a "conspiracy" to interfere with Hinton's civil rights.[4]

If granted, this Motion will dispose of all claims against Harris County and Sheriff Ed Gonzalez (referred to collectively as "Harris County" unless otherwise noted).[5] Harris

---

[1]   Sheriff Gonzalez was not elected until November 2016 and did not take office until January 2017. Rodrin Hinton died on March 24, 2016, before the election. There are no allegations in the Complaint that (Sheriff) Ed Gonzalez had any relationship to Hinton or engaged in any action in his individual capacity that contributed to Hinton's death.

[2]   *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

[3]   Doc. 1, Original Complaint. Although Plaintiff filed a First Amended Complaint on July 27, 2018 [Doc. 14], Plaintiff did not seek leave to file it and the Court indicated this Complaint was not recognized. See Order, Doc. 16, noting the "cancelled complaint."

[4]   Doc. 1, pp.2-3.
[5]   On August 13, 2018, Plaintiffs filed an *opposed* Motion for Leave to Amend their Complaint and add Nurse Amanda Cooper as a defendant. [Doc. 17]. However, the Plaintiffs previously acknowledged at

County denies that any constitutional violation occurred, or that it is liable to Plaintiffs in any amount, under any theory.

## **Factual Background**

Hinton was arrested and in the Harris County jail for assaulting his pregnant wife on March 6, 2016.[6]  It was alleged Hinton shoved her into a wall holding a picture frame that shattered and caused her to fall to the ground on her back and bottom and on top of broken glass cutting her left arm.[7]  Hinton's wife called 911 and was transported to the hospital.[8]  After she was released from the hospital and arrived home, Hinton (who was also taken to the hospital for suspected drug intoxication and released) came to the house and allegedly "frog-punched" his wife hard in the sternum while she was holding her 16-month old son and then forcefully took her son out of her arms and fled the house with the child.[9]  This was the second time in less than a year Hinton was in jail for assaulting his wife.[10]

---

the July 31, 2018 pre-trial conference they were *not* suing Nurse Cooper – this is reflected in the Court's Order, Doc. 16, "Candice Hinton disclaims that Sheriff Ed Gonzales, the nurse, and the jail staffers are parties.  If her cancelled complaint seems to include them as parties, it does not."  Harris County will be filing a Response to the opposed motion for leave.

[6]      Doc. 1, Plaintiffs' Complaint, p. 7, ¶ 10. *See also* the State's March 11, 2016 complaint for the felony charge of Assault, Family Violence, 2nd Offender, attached as Ex. 1.  Harris County asks the Court to take judicial notice of the state court filing.  *See also* Plaintiffs' Complaint, p. 7, ¶ 10.

[7]      Ex. 1, State's complaint.

[8]      *Id*.
[9]      *Id.*

[10]      *Id*.  On September 8, 2015, Hinton pled guilty to the assault and a protective order was issued preventing him from coming near his wife, Plaintiff Candice Hinton. *See* Judgment of Conviction By Court, Ex. 2. *See also* September 8, 2015 Magistrate's Order For Emergency Protection, Ex. 3.  Harris County requests the Court take judicial notice of these state court orders.

Unable to make his $20,000 bond, Hinton was detained in the jail.[11]  On March 24,

2016, at 4:40 p.m., Hinton was involved in an altercation with another inmate.[12]  Witnesses

allege Hinton, without any provocation, walked across the fifth floor jail cellblock housing

several inmates and struck an inmate in the face from behind who was watching

television.[13]  Numerous inmates witnessed Hinton strike this inmate, who got up and

defended himself.[14]  The fight was short lived as the smaller inmate gained the advantage

and Hinton asked him to stop.[15]  Officers quickly responded to the scene and the fight was

over before the officers entered the cellblock.[16]  Other inmates and the officers saw Hinton

and the other inmate walk away from the fight without any sign of serious injury.[17]

---

[11]     Doc. 1, Complaint, p. 6, ¶ 10.

[12]     *Id*. at ¶ 11.

[13]     See Harris County Sheriff's Office Incident Report No. 16-47531, Ex. 4, Suppl. 5, pp. 4-6, documenting interviews of inmates Jose Miramontes, Antonio Morones, Brian Ray, Dorian Jones, and Nerlin Rodriguez. See also Suppl. 6, pp. 5-6, documenting interviews of inmates Jordan Alvarado, Michael Stritz, Patrick Smith, Donald Wilson, and Alec Casey. See also audio recorded interviews of witnesses, attached collectively as Ex. 5.

[14]     *Id*.  This was not the first time Hinton assaulted a fellow inmate.  While in jail in October 2015 for assaulting his wife, he pled guilty to assaulting an inmate and lost 7 days of visitation and commissary privileges. *See* Detention Command-Inmate Offense Report 2015-38257, Ex. 6.  *See also* Current Disciplinary History, Ex. 7.

[15]     Ex. 4, Suppl. 5, pp. 4-6, documenting interviews with inmates Michael Persons, Nerlin Rodriguez; Suppl. 6, documenting interviews of inmates Brian Johnson and Alec Casey.  See also Ex. 5, audio recorded interview.

[16]     Doc. 1, p. 6, para. 11, noting rovers responded by 4:43pm, which was three minutes after the fight had begun.  See also Ex. 4, Suppl. 5, pp. 5-6, documenting interviews of inmates Michael Persons, Antonio Morones,William Webb and Ex. 5, audio interviews.  See also Ex. 8, Sworn statement of Detention Officer Alejandro Jimenez and Ex. 9, Sworn statement of Detention Officer Elvia Guzman.

[17]     Doc. 1, p. 7, para. 11, stating the "on-scene sergeant indicates he did not observe injury to either detainees."  *See also*, Ex. 4, Suppl. 2, p.2; Suppl. 3, p. 3; Suppl. 5, pp. 5-6, documenting interviews of inmates Antonio Morones, William Webb, Dorian Jones; Suppl. 6, pp. 4-5, documenting interviews of inmates Brian Johnson, Jordan Alvarado and Michael Stritz. See also Ex. 5, audio interviews.

Detention Officer Brandon Morehouse approached Hinton, who was sitting on a dayroom table and appeared to be tired and breathing heavy from a fight, and told him he was going to be removed from the cellblock.[18] Hinton walked "normally" out of the cellblock and Officer Morehouse handcuffed him in a comfortable position because Hinton was being "very compliant."[19] While walking to the elevator lobby on the way to the medical clinic, Hinton had to sit on the floor and rest; Officer Morehouse allowed him to rest for about two minutes before prompting him to get up so he could get him to the medical clinic.[20]  Detention Officer Roberto Morales, who was assisting with Hinton's escort, helped Hinton to his feet.[21]  Officer Morehouse stated that when Hinton stood up, he began to act strangely by talking fast, like he was hyped up from physical activity.[22] After walking Hinton to the elevator lobby without much difficulty, Hinton began to lean against the wall like he was tired and asked to lie down on the floor.[23] Officer Morehouse let Hinton lay down and when Hinton complained he was having trouble breathing and needed water, he got him two cups of water.[24]  After they got on the elevator, Hinton asked to sit on the floor and Officer Morehouse allowed him to do so.[25]  After they were off the elevator and headed to the medical clinic, Hinton's legs buckled and he fell to the floor.[26] The officers picked Hinton up and put him in the chair in the clinic.[27]

---

[18]     See Ex. 10, Sworn statement of Officer Brandon Morehouse.
[19]     *Id*.
[20]     *Id*.
[21]     *Id*.
[22]     *Id*.
[23]     *Id*.
[24]     *Id*.
[25]     *Id*.
[26]     *Id*.
[27]     *Id*.

In the medical clinic, Nurse Amanda Cooper, a Licensed Vocational Nurse, observed Hinton and did not see any scratches on him or anything to indicate he was in an altercation.[28]  She asked him if he would like to see a doctor and he told her "no."[29] Officer Morehouse witnessed Hinton refuse medical treatment.[30]  Because Hinton was refusing medical treatment, Nurse Cooper asked him to sign the document "Refusal of Medical Treatment."[31]  When Hinton refused to sign the document, Officer Morehouse witnessed Hinton's refusal.[32] It is not uncommon for an inmate to refuse to sign this "Refusal" form when they are refusing medical treatment.[33]

The officers then escorted Hinton back to the elevators and up to the fifth floor. Hinton lost his balance and leaned against the wall, but did not request medical treatment.[34] On the way back to a holding cell, Hinton fell down and two medical personnel helped pick him up because he was heavy and having trouble breathing.[35] Hinton did not ask these

---

[28]    Ex. 4, Suppl. 3, p. 4, documenting interview of Nurse Amanda Cooper.  See also Ex. 5, audio interview of Nurse Cooper.  See also Ex. 11 ,HCSO Triage Medical record 3/24/16, noting "no cuts or bruises or obvious signs of distress was noted."

[29]    *Id*.

[30]    *Id*., *See also* Ex. 10, Officer Morehouse's sworn statement.

[31]    Ex. 4, Suppl. 3, p. 4, documenting interview of Nurse Cooper and Ex. 5, audio recorded interview. *See also*, Ex. 12, Hinton's Refusal of Medical Treatment.
[32]    See Ex. 12, Refusal form.  See also, Ex. 10, Officer Morehouse's Sworn statement; Ex. 4, Suppl. 3, p. 4, interview of Nurse Amanda Cooper and Ex. 5, audio interview.

[33]    Ex. 4, Suppl. 3, p. 4, interview of Nurse Amanda Cooper and Ex. 5, audio interview.

[34]    Ex. 10, Officer Morehouse's Sworn statement.  See also the Declaration of Brandon Morehouse, Ex. 13.

[35]    Ex. 10, Officer Morehouse's Sworn statement.

7

medical personnel for help or ask them to take him to the medical clinic.[36]  In fact, at no point after Hinton left the medical clinic did he ask to return to the medical clinic for treatment.[37]

Officer Morehouse took Hinton to a holdover cell, removed his handcuffs, went to get a round sheet, started to fill it out and returned to get information from Hinton.[38] When Officer Morehouse returned a few minutes later, he observed Hinton lying on the floor and breathing heavy and left to find a rover so he could go into the cell and observe Hinton closer.[39]  Because there were no available rovers, he went to Sgt. Robert Caballero's office to tell him Hinton was not responding to his questions.[40]  They immediately returned to Hinton's cell (and by this time Officers Morales and Jimenez were there) and they opened the door to his cell and noticed Hinton did not appear to be breathing.[41]  Officer Morehouse ran to get the CPR kit and returned to Hinton's cell, where the officers began CPR until medical help arrived and they continued to assist medical personnel while taking him to the clinic.[42]  There was no indication to Officer Morehouse at any time while he was escorting Hinton to and from the medical clinic or when he returned him to a cell on the

---

[36]     Ex. 13, Officer Morehouse's Declaration.

[37]     *Id*.

[38]     Ex. 10, Officer Morehouse's Sworn statement.

[39]     *Id*.
[40]     *Id*.
[41]     *Id*.
[42]     *Id*.

fifth floor that Hinton was suffering from a serious medical condition or that Hinton was in need of immediate medical treatment.[43]

Hinton was found to be unresponsive and laying on the floor in his cell only 25 minutes after Hinton attacked the other inmate.[44]   Hinton was transported back to the medical clinic and received additional medical care while waiting for HFD to arrive and transport him to the hospital.[45]   The following is a timeline of the relevant events:

| | |
|---|---|
| 4:40 pm | Hinton attacks inmate Caleb Parras |
| 4:43 pm | Fight ends and officers respond; Inmate Parras is first to be escorted to the medical clinic |
| 4:53 pm | Hinton is escorted to the medical clinic; this takes several minutes because Hinton sits down on the floor for 2 minutes during the walk to the elevator; Hinton sees the nurse and refuses medical treatment; |
| 4:58 pm | Hinton's refusal is documented as noted on the Refusal of Medical Treatment form at 16:58 hours; Hinton is returned to his cell; Officer Morehouse gets paperwork and begins to fill it out |
| 5:05 pm | Officer Morehouse returns and finds Hinton laying on the cell floor and is not answering his questions; Officer Morehouse wants to come into the cell to better observe Hinton and looks for rovers; gets his Sgt. and returns to find Hinton unresponsive; medical assistance is summoned and CPR is initiated and medical personnel respond |

---

[43]     Ex. 13, Officer Morehouse's Declaration.

[44]     Plaintiffs' Complaint states the fight was over at 4:43 p.m., Doc. 1, p. 6, ¶ 11.  Hinton saw medical personnel, then returned to a cell on the fifth floor, and was found unresponsive in his cell at 5:05 p.m. (only 22 minutes after the fight had ended).

[45]     Doc. 1, p. 7, ¶ 11.

5:20 pm        Hinton arrives in medical clinic & HPD is dispatched and arrives 9 minutes later[46]

Hinton was taken to the hospital where he was later pronounced dead.[47]  The autopsy found both the manner and cause of death to be *undetermined*.[48]

## Legal Standard

The standard which the Court applies when reviewing a motion for summary judgment is set forth in Fed. R. Civ. P. 56, and in *Celotex Corp. v. Catrett*.[49]  "The mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[50]  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  The substantive law identifies which facts are "material."[51] *Id*. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[52]

---

[46]     Timeline:  **4:40 pm** - Ex. 9, Officer Guzman Sworn Statement; 4, HCSO Incident Report, Supp. 3, p. 6; **4:43 pm** - Doc. 1, p. 6-7, ¶ 11; **4:53 pm** - Ex. 4, Supp. 3, p. 4 Nurse Cooper interview notes (and Ex. 5 audio interview of Nurse Cooper); **4:58 pm** – Ex. 12, Medical Treatment Refusal form; **5:05 pm** – Ex. 14, Executive Summary; **5:20 pm** – Ex. 14, Executive Summary.

[47]     Doc. 1, p. 7, ¶ 11.

[48]     Ex. 15, Autopsy Report, Case No. ML16-1135.

[49]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 206 S.Ct. 2505 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986).

[50]     *Anderson*, 106 S.Ct. at 2510.

[51]     *Id*.

[52]     *Ducket v. City of Cedar Park, Texas*, 960 F.2d 272, 276 (5th Cir. 1992).

"Factual disputes that are irrelevant or unnecessary will not be counted."[53]   There is no

dispute of material fact in this lawsuit and Harris County is entitled to summary judgment.

<u>Argument</u>

**1.      Plaintiffs have no claims against Sheriff Ed Gonzalez.**

Plaintiffs' Complaint is unclear whether it asserts a claim against Sheriff Gonzalez

in his individual or official capacity or both.[54]   At the pre-trial conference before the

Honorable Judge Lynn Hughes on July 31, 2018, Plaintiffs' counsel indicated they were

not asserting a claim against Sheriff Gonzalez in his individual capacity and the Order

entered following the hearing stated that "Candice Hinton disclaims that Sheriff Ed

Gonzales, the nurse, and the jail staffers are parties."[55]   This disclaimer appears to be

confirmed by the proposed Amended Complaint attached to Plaintiffs' opposed motion for

leave to file an amended complaint [Doc. 17-1], in which Plaintiffs have removed *all*

*claims* against Sheriff Gonzalez.   However, since this is not a live Complaint and leave has

not been granted, in an abundance of caution, Sheriff Gonzalez will very briefly address

the Plaintiffs' claims against him.

**a.      No individual claim**

To bring suit against Sheriff Gonzalez in his individual capacity is nonsensical.   He

was not elected as Harris County Sheriff until November 2016 and took office in January

---

[53]      *Id*.

[54]      Doc. 1, p. 5,¶ 8, "Defendant Ed Gonzales,  in his individual and official capacity as Sheriff….is an adult citizen."

[55]      Doc. 16.

2017, ten months *after* Hinton died.  The Complaint does not allege and there is no evidence that Ed Gonzalez was working in the Harris County jail during Hinton's incarceration, and in particular, on March 24, 2016 when Hinton died.  Sheriff Gonzalez is not listed anywhere in the incident report as someone involved in what transpired on March 24, 2016.[56]  Sheriff Gonzalez is entitled to summary judgment on claims against him individually.

### b.    No official capacity claim[57]

Plaintiffs' suit against Sheriff Gonzalez in his official capacity is redundant and unnecessary because Plaintiffs have also sued Harris County. A suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent."[58] If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity.[59] A suit against a municipal official in his official capacity is not a suit against the official personally, because the real party in interest is the entity.[60]  Therefore, Plaintiffs' claims against Sheriff Gonzalez are unnecessarily duplicative of her claims against Harris County and summary judgment is proper on the official capacity claims.

---

[56]    Ex. 4, HCSO incident report.

[57]    In the proposed Amended Complaint attached to Plaintiff's opposed motion for leave to file amended complaint, Plaintiff has removed all claims against Sheriff Ed Gonzalez.  Thus, Plaintiffs have effectively conceded they have no claim in either an individual or official capacity against Sheriff Gonzalez.

[58]    *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

[59]    *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

[60]    *Id*.

2.      **Plaintiffs have no claims against Harris County.**

a.      **No conspiracy claims under § 1985.**

Plaintiffs' conspiracy claim arises solely under 42 U.S.C. § 1985(3), and Plaintiffs cannot meet the elements required to defeat this Motion.  Under § 1985(3), Plaintiffs must establish (1) a conspiracy of two or more persons; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.[61] This has been further refined through later case law to require that the complaint allege some racial or other class-based discriminatory animus underlying the defendants' actions, and that the conspiracy was aimed at interfering with the plaintiff's protected rights.[62]

Plaintiffs attempt to plead violations of 42 U.S.C. § 1985(3) by restating all previously pled allegations and simply adding the blanket phrase "Defendants and their co-conspirators" in front of each allegation.[63]  This argument is misplaced, without merit and nonsensical.   The only named Defendants are Harris County and Sheriff Gonzalez.  Plaintiffs' claims against Sheriff Ed Gonzalez in his official capacity are the same as suit against Harris County.[64]  Plaintiffs have not identified any other alleged "co-conspirator."

---

[61]      *Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

[62]      *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

[63]      Doc. 1, p. 17-19.

[64]      It has already been established Ed Gonzalez is not liable in his individual capacity because he was not the Sheriff at the time Hinton died.  There is no evidence of a conspiracy between Harris County and Ed Gonzalez in his individual capacity and there are no facts alleged to support same.

Since Harris County cannot conspire with itself, Plaintiffs cannot meet the very basic element of two or more people required to sustain a conspiracy claim.[65]

Plaintiffs' claim likewise fails because they have no facts that an alleged conspiracy was aimed at depriving Hinton's rights because of any protected class.  The Fifth Circuit requires a § 1985(3) claim to be based on "an allegation of race-based conspiracy."[66] Plaintiffs have not alleged a race-based conspiracy.  Instead, they have argued Hinton had a right to be "protected from violent inmates."[67]  However, as is evidenced by the fight Hinton started on March 24, 2016, as well as his assault of a different inmate on a prior jail stint, the inmates at the Harris County needed protection *from him*.  Plaintiffs have not alleged any facts suggesting a conspiracy "aim[ed] at a deprivation of the equal enjoyment of rights secured by the law to all."[68]

Neither do Plaintiffs allege any facts to support an actual conspiracy. "A mere allegation of conspiracy without factual specificity is insufficient."[69] All of the allegations concerning a conspiracy are conclusory and unsupported by any evidence.  For example,

---

[65]     *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).

[66]     *Bryan v. City of Madison,* 213 F.3d 267, 276 (5th Cir.2000), *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001) (citing *Newberry v. East Tex. State Univ.,* 161 F.3d 276, 281 n. 2 (5th Cir.1998)).

[67]     Doc. 1, p. 19, ¶ 57.

[68]     *Griffin,* 403 U.S. at 102, 91 S.Ct. 1790; *see Roe v. Abortion Abolition Soc'y,* 811 F.2d 931, 933–34 (5th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987).

[69]     *Karim--Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (requiring complaint to allege "evidence of a conspiracy and an act in furtherance of that conspiracy").

14

Plaintiffs plead, "Defendants and their co-conspirators acted with deliberate indifference to Rodrin Hinton's right to be medically diagnosed and proper medical treatment to prevent deprivation of life."[70] Plaintiffs' do not allege any facts that show any actions made with deliberate indifferent to Hinton's "right to be medically diagnosed." Hinton was taken to the medical clinic to be checked out after he started a fight. Nurse Cooper saw Hinton, observed no scratches or bruises or anything indicating Hinton had any injuries, and yet still asked him if he wanted to see a doctor. Hinton refused. The evidence shows he was given a right to be medically diagnosed. With regard to medical treatment, he refused it. When he was found unresponsive in his cell, jail and medical staff took immediate action to provide him with medical treatment.

Finally, Plaintiffs have not and cannot establish Hinton suffered an injury or deprivation from a non-existent conspiracy. Because Plaintiffs have failed to demonstrate a viable claim under § 1985, Harris County is entitled to summary judgment on this claim.

**b.    No claims under § 1983 – the relevant case law.**

Plaintiffs sued Harris County under 42 U.S.C. § 1983, the civil rights statute. To prevail on a § 1983 claim, Plaintiffs must prove that Harris County, acting under color of law, deprived Hinton of a right secured by the Constitution or laws of the United States.[71]

---

[70]    Doc. 1, p. 17, ¶ 46.

[71]    *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).

Plaintiffs must support this claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[72]

Plaintiffs must also prove that the alleged constitutional or statutory deprivation was intentional or was due to deliberate indifference, and was not the result of mere negligence.[73] The negligent deprivation of life, liberty or property is not a constitutional violation.[74]

A local government is liable under § 1983 only when a deprivation of rights is inflicted pursuant to official policy.[75] The United States Supreme Court has expressly held that governmental entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or discussion officially adopted and promulgated by that body's officers."[76] Plaintiffs must plead and prove a custom or policy of the governmental entity before it can be held liable; a governmental entity cannot be held liable on a *respondeat superior*

---

[72]     *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S. Ct. 279 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985).

[73]     *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels*, 474 U.S. at 328, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

[74]     *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington,* 957 F.2d 1268, 1276 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988).

[75]     *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-691 (1978); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989).

[76]     *Monell*, 436 U.S. at 690.

theory.[77]  The Fifth Circuit has summarized the showings required of a plaintiff to hold a

governmental entity liable as follows:

> To establish county/municipal liability under Section 1983 . . . a
> plaintiff must demonstrate a policy or custom which caused the constitutional
> deprivation.  A municipality may not be held strictly liable for the acts of its
> non-policymaking employees under a respondeat superior theory.  It cannot
> be held liable solely because it employs a tortfeasor.  Rather, only when the
> execution of a county's policies or its customs deprives an individual of
> constitutional or federal rights does liability under Section 1983 result.[78]

The Fifth Circuit has defined official policy or custom as: (1) a policy statement,

ordinance, regulation, or decision that is officially adopted and promulgated by the city's

lawmaking officers or by an official to whom the lawmakers have delegated policy-making

authority; or (2) a persistent, widespread practice of (governmental) officials or employees,

which, although not authorized by officially adopted and promulgated policy, is so

common and well settled as to constitute a custom that fairly represents municipal policy.

Actual or constructive knowledge of such custom must be attributable to the governing

body of the municipality or to an official to whom that body delegated policy-making

authority.   The actions of an officer or employee of a municipality do not render the

municipality liable under § 1983 unless they execute official policy as it is defined above.[79]

---

[77]     *Monell*, 436 U.S. at 691; *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).

[78]     *Colle v. Brazos County, Tex.*, 981 F.2d 237, 244 (5th Cir. 1993).

[79]     *Webster v. City of Houston*, 735 F.2d 838, 841, *reh'g on other grounds*, 739 F. 2d 993 (5th Cir. 1984 (*en banc*); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862. The courts recognize a third situation in which a municipal policy may be found.  This situation occurs when a policymaker fails to act affirmatively at all, if the need to take action to control the agents of the local governmental agency is so "obvious, and the inadequacy (of the existing practice) so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  *Brown v. United States*, 653 F.2d 196 (5th Cir. 1981).

Additionally, to prevail, Plaintiffs must establish a direct causal link between the governmental policy or custom and the alleged constitutional deprivation.[80] Specifically, the plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of the rights inflicted.[81]  Plaintiffs must also establish that a governmental policy or custom was the proximate cause of the injuries sustained.[82]

Further, to prevail against a governmental entity under § 1983 Plaintiffs must demonstrate that a [governmental] decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow.[83] The Supreme Court explained:

> "[I]t is not enough for a Section 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[84]

---

[80]    *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995).

[81]    *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997)(*quoting Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

[82]    *Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1059 (9th Cir. 1998); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117, 117 S. Ct. 1249, 137 L.Ed.2d 330 (1997);  *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3rd Cir. 1996);  *Rheuark v. Shaw*, 628 F. 2d 297, 305 (5th Cir. 1980), *cert. denied sub. nom.  Rheuark v. Dallas County, Tex.*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981).

[83]    *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[84]    *Brown,* 117 S. Ct. at 1388; *See also Spiller*, 130 F.3d at 167 (*quoting Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).

Thus, a plaintiff seeking to recover against a governmental entity under § 1983 must first prove a direct causal link between the governmental policy and/or custom at issue and the alleged constitutional deprivation; he then must establish that the governmental entity consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.[85] Deliberate indifference, the degree of culpability required to hold a governmental entity liable, is a stringent standard of fault, requiring proof that a governmental actor disregarded a known or obvious consequence of his action."[86]

Plaintiffs' Complaint fails to identify an actual written policy of Harris County that precipitates the violation of Hinton's constitutional rights.  Therefore, the analysis shifts for Plaintiffs to show there is a persistent widespread pattern, practice or custom.

### c.    No persistent widespread pattern or practice or custom

Plaintiffs have no admissible evidence to prove that Harris County was "deliberately indifferent" and had an official policy, practice or custom that caused a violation of Hinton's constitutional rights.  Plaintiffs' burden of proof is not satisfied by a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence."[87]

---

[85]     *Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998), *cert. dism'd*, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999)(*citing City of Canton*, 109 S.Ct. at 1205; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 n. 4 (5th Cir. 1996).

[86]     *Brown*, 117 S. Ct. at 1391**;** *Piotrowski*, *Id.*; 237 F.3d at 579 (also describing the standard for facially innocuous policies as stringent).

[87]     *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir.), *cert. denied*, --- U.S. ---, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010); *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir. 1996).

The claims which Plaintiffs bring against Harris County are based solely on conclusory allegations and unsubstantiated assertions.  Plaintiffs allege the "written and unwritten" policies, customs, patterns and practices include: [88]

(1) "inadequate staffing of and failure to monitor tiers where inmates are housed"

**Response**:     Plaintiffs have alleged no facts to support this overbroad claim.  Clearly, there were officers working in and around the cellblock when the fight broke out as Officer Guzman responded immediately when she heard the fight and two other officers quickly responded (Officers Jimenez & Morehouse).

(2) "inadequate, improper and unreasonable screening, treatment and monitoring of inmates after having been assaulted by another inmate suffering from serious medical injury and/or complaining of medical injury and/or complications while in custody"

**Response**:     Plaintiffs have alleged no facts to support this claim.  After Hinton assaulted an inmate, he was taken directly to medical to be evaluated and treated.  Nurse Cooper observed Hinton to not have any scratches or bruises or to be in any distress.  Regardless, she still asked Hinton if he wanted to see a doctor and Hinton refused.

(3) "inadequate and unreasonable sick call, referral, and follow-up procedures relative to the serious medical needs of persons in custody"

**Response**:     Plaintiffs have alleged no facts to support this vague and ambiguous claim.  Hinton refused medical treatment, but when he was discovered unresponsive, jail and medical staff immediately responded and provided medical treatment.

(4) "inadequate and unreasonable on-site medical staffing and coverage"

---

[88]     Doc. 1, Complaint, p. 13, ¶¶ 35.1-10. Plaintiffs do not identify a single, particular policy about which they complain.

**Response**:      Plaintiffs have alleged no facts to support this claim. Certainly, when Hinton needed medical attention on March 24, 2016, there was adequate and reasonable medical staffing and coverage.  Nurse Cooper was available and saw Hinton within minutes of his attack on another inmate.  In addition, when Hinton was found unresponsive, medical staff quickly responded and provided medical treatment, while contacting HFD to take him to the hospital where he could be further treated.

     (5)      "hiring of inadequately trained and inexperienced persons to screen and monitor persons in the custody of HCSO"

**Response**:      Plaintiffs have alleged no facts to support this overbroad claim.  Plaintiffs do not state which persons are allegedly not properly trained or experienced or how they lack proper training or experience.  Nurse Cooper is an LVN.  To obtain her license, she necessarily would have received medical training.  Harris County will address training claims in more detail below.

     (6)      "hiring of inadequately trained persons to render medical treatment to persons in custody"

**Response**:      Plaintiffs have alleged no facts to support this overbroad claim.  Plaintiffs do not state which persons are allegedly not properly trained or how they lack proper training.  Nurse Cooper is an LVN, which required she complete certain training to hold this license.

     (7)      "inadequate training, supervision, and discipline of medical personnel responsible for screening, diagnosis, and treatment of medical conditions at HCSO jail"

**Response**:      Plaintiffs have alleged no facts to support this overbroad claim.  Plaintiffs do not state which persons are allegedly not properly trained, supervised or disciplined or how

they lack proper training, supervision or discipline.  Nurse Cooper is an LVN, which required she complete certain training to hold this license.

(8)    "inadequate hiring, training, supervision, and discipline of deputies and supervisors responsible for the observation and monitoring of detainees and the identification and communication of problems and/or serious medical needs of persons in custody to appropriate medical personnel"

**Response**:    Plaintiffs have alleged no facts to support this claim.  Courts have recognized that, under limited circumstances, the failure to train or to supervise employees may give rise to County liability under § 1983.[89]  In such cases, a County may be held liable only when its actions amount to deliberate indifference to the constitutional rights of those citizens with whom the untrained or unsupervised employees come into contact.[90]  Courts have repeatedly emphasized how very high the standard of proof is to impute liability in these cases.[91]

Typically, a plaintiff can prove deliberate indifference only through evidence of a pattern of violations caused by the lack of training or supervision.[92]   The factfinder simply cannot infer a policy of authorizing misconduct from a single incident except in "a narrow range of circumstances where a constitutional violation would result as the highly predictable consequence of a particular failure to train."[93]  "Without notice that a course of

---

[89]    *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011); *Thompson v. Upshur Cty, TX*, 245 F. 3d 447, 459 (5th Cir. 2001)

[90]    *Id*.

[91]    *See*, *e.g*., *Connick*, 131 S. Ct. at 1360.

[92]    *See Connick*, 131 S. Ct. at 1360; *Thompson*, 245 F.3d at 459.

[93]    *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468 (5th Cir. 2014) (quoting *Connick*, 131 S. Ct. at 1361); *see also Thompson*, 245 F.3d at 459.

training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[94]

To find Harris County liable on a failure to train and/or supervise theory, Plaintiff must establish "(1) inadequate training procedures; (2) that inadequate training caused [the constitutional violation]; and (3) the deliberate indifference of municipal policymakers."[95] Plaintiffs have not alleged any facts and have no evidence of any inadequate training procedures. They further have not alleged any facts and have no evidence that any alleged inadequate training caused a constitutional violation. And, Plaintiffs have not alleged any facts and have no evidence that Harris County's policymakers were deliberately indifferent. There is likewise no evidence of a pattern of incidents caused by a lack of training and supervision.

Further, with respect to the medical staff, Harris County relies on the licensed medical providers who evaluated and provided care to Hinton based on their medical judgment, their perception of Hinton's condition at the time of their evaluation and based on the policies and procedures of Health Services, as approved by the Texas Commission on Jail Standards and the NCCHC.[96]

   (9)    "a pattern and practice of ignoring detainees' requests and needs for medical psychiatric treatment, including the need for proper medications, and/or of providing unreasonable and patently insufficient treatment for detainees'

---

[94]      *Connick*, 131 S. Ct. at 1360.

[95]      *Pineda v. City of Houston,* 124 F.Supp.2d 1057, 1078 (S.D. Tex. 2000), (citing *Conner v. Travis Cty*, 209 F.3d 794, 796 (5th Cir. 2000).

[96]      Ex. 16, Declaration of Dr. Marcus Guice.

conditions, and/or failing to properly monitor detainees who are treated, causing serious pain, suffering, injury and/or death"

**Response**:      Plaintiffs have alleged no facts to support this overbroad claim.  This case is not about the provision (or lack of) psychiatric treatment.  Hinton was offered and refused medical treatment.  Officer Morehouse was very accommodating to Hinton's needs – by allowing him to rest and providing him a drink when requested.

(10)   "inadequate quality control policies, procedures, and practices; inadequate critical incident review; inadequate mortality reviews; and inadequate identification and correction of serious deficiencies in policy and practices affecting the delivery and quality of medical services"

**Response**:      Plaintiffs have alleged no facts to support this overbroad claim.  Plaintiffs have not identified any critical incident or mortality review or how any of them are inadequate and have not identified a single policy, practice or procedure that is claimed to be inadequate/deficient or how it is inadequate/deficient.

The Sheriff's Office policies and procedures are, and have continually been, accredited by the NCCHC since 1985.[97]  The NCCHC is the primary national accrediting body for the provision of health care in jails and prisons.[98]  Not only are the policies and procedures reviewed and accredited, actual practice is monitored and accredited through on-site surveys every three years.[99]  The care of patients with all health conditions meets NCCHC standards.[100]  Additionally, the policies and procedures concerning health care in the Jail are regularly reviewed and have been approved by the Texas Commission on Jail

---

[97]      Ex. 16, Dr. Guice Declaration.
[98]      *Id*.
[99]      *Id*.
[100]      *Id*.

Standards.[101]   As Interim Director for Health Services, Dr. Guice relied on the approval and accreditation by the NCCHC and the Texas Commission on Jail Standards to support his opinion that the policies and procedures for the Sheriff's Office Health Services Division are proper and adequate.[102]

### d.   No facts or evidence of malicious, willful, wanton or reckless conduct

Plaintiffs have no evidence to support their assertion that the actions of Harris County or its officials or employees acted in a manner that were "malicious, willful, wanton and reckless."   To the contrary, the actions of the jail and medical staff involved in the incident on March 24, 2016 showed their concern for Hinton and his medical condition.

### e.   No § 1983 claim that shows deliberate indifference to a serious medical need

Plaintiffs allege Harris County had a policy, custom and usage that "allowed for a deliberate indifference to a serious medical need" of Hinton in violation of his Eighth Amendment right.[103]   However, Plaintiffs do not identify a policy, custom or practice. Because Plaintiffs cannot point to a policy, custom or practice they cannot establish the requisites of Harris County liability.   Instead, they focus on the alleged acts and omissions by jail staff they claim shows deliberate indifference.   Specifically, they allege Hinton was given a drink a water instead of being provided "medical attention."[104] They allege Hinton was placed in a holdover cell instead of "addressing his medical need." [105]   Plaintiffs further

---

[101]      *Id*.
[102]      *Id*.
[103]      Doc. 1, p. 11, ¶ 24.
[104]      Doc. 1, p. 12, ¶ 28.
[105]      Doc. 1, p. 12, ¶ 26.

complain "John Doe Jail Staffer" had subjective knowledge of the "risk of serious harm" to Hinton and "disregarded that risk" and made a "medical diagnosis" based on Hinton's outward appearance.[106]

Plaintiffs have mischaracterized the evidence.  First, Hinton was given a drink of water *when he asked for it* while Hinton was *on his way* to the medical clinic.  Second, after Hinton refused medical treatment, he was returned to his cell.  There was no indication to Nurse Cooper in the clinic or to the two medical personnel that assisted Hinton when he fell on his way back to his cell, that he was suffering from any serious medical condition. In addition, Officer Morehouse did not observe Hinton to be suffering from any serious medical condition and Hinton did not tell him he needed urgent medical care.  There is no evidence Officer Morehouse had subjective knowledge of a risk of serious of harm and that he disregarded that risk.  To the contrary, when Officer Morehouse returned a few minutes after escorting Hinton to his cell and found him to be unresponsive to his questions, Officer Morehouse went in immediate search of a rover or his sergeant so he could go into Hinton's cellblock and take a closer look at him.  When he did, he immediately initiated CPR on Hinton.

Plaintiffs cannot establish an underlying constitutional violation by a government actor.  There is no evidence that any of the jail staff or medical providers who treated Hinton – either Nurse Cooper when Hinton came to the clinic and refused treatment or the two medical personnel that helped him up when he fell or the medical staff treating Hinton

---

[106]     Doc. 1, p. 12, ¶ 29.

after he was found unresponsive or Officer Morehouse when he escorted Hinton back to his cell and put him in there -- acted with subjective deliberate indifference, *i.e*, that they knew of and disregarded a substantial risk of serious harm to Hinton.[107]  In that respect, Plaintiffs fail to demonstrate that jail or medical staff refused to treat Hinton, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[108]

Even if there were evidence of deliberate indifference by an employee, there is no evidence that any Harris County employee's act resulted from one of its policies or customs maintained with objective deliberate indifference to Hinton's constitutional rights. Because there is no evidence of the "constitutional violation simpliciter," Plaintiffs' claim against Harris County must fail.

Even if Plaintiffs could establish a constitutional violation, there is no evidence that former Harris County Sheriff Ron Hickman, or present Harris County Sheriff Ed Gonzalez had actual or constructive knowledge of the alleged customs, policies and procedures about which Plaintiffs vaguely complain.

Finally, the Supreme Court has held that a plaintiff must establish that the County's policies were the "moving force" behind the constitutional violation.[109]  In an episodic act or omission case, to succeed in holding Harris County accountable for an employee's due

---

[107]     *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

[108]     *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006).

[109]     *Monell*, 436 U.S. at 694.

process violation, Plaintiffs must show that the employee's act resulted from a policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights.[110]  Plaintiff can make no such showing and thus cannot establish a genuine issue of material fact with regard to the County's liability.

The Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment.[111]  To the extent Plaintiffs claim that any denial of care constitutes negligence or "medical malpractice," these types of allegations are not sufficient to demonstrate a constitutional violation or to maintain an action under 42 U.S.C. § 1983.[112]

Mere delay in receiving care is not in and of itself a constitutional violation.[113]  The Fifth Circuit has ruled a delay of four weeks in providing medical care was not a violation of a constitutional right unless it results in substantial harm.[114]  Regardless of the length of delay, a plaintiff at a minimum must show deliberate indifference to serious medical needs.[115]

---

[110]     *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997)(*en banc*).

[111]     *Stewart v. Muphy,* 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter,* 766 F.2d 179, 181(5th Cir. 1985); *Young v. Gray,* 560 F.2d 201,201 (5th Cir. 1977).

[112]     *Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir. 2001), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1083, 151 L.Ed.2d 983 (2002); *see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999)*("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

[113]     *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990).

[114]     *Lacy v. Shaw*, 357 Fed.App. 607, 2009 WL 4885183, * 3 (5th Cir. 2009).

[115]     *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The failure to alleviate a significant risk that an official or medical personnel should have perceived, but did not, likewise does not state a constitutional violation.[116]  "The subjective intent to cause harm cannot be inferred from a … failure to act reasonably."[117] To the extent that any inaction may have been negligent, this does not rise to the level of a constitutional violation.[118]  An incorrect diagnosis by medical personnel does not state a constitutional violation.[119]

As long as jail medical personnel exercise professional medical judgment, their behavior will not violate an inmate's constitutional rights.[120]  Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not deliberate indifference.[121]   "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'"[122]

---

[116]   *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

[117]   *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000); *Hare*, 74 F.3d at 649.

[118]   *Daniels v. Williams,* 474 U.S. at 333-34 (1986).

[119]   *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza,* 989 F.2d at 195; *Walker,* 967 F.2d at 178; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990).

[120]   *Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).  *See Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc) (discussing *Youngberg*).

[121]   *Harris v. Hegman*, 198 F.3d at 159 (citing *Mendoza*, 989 F.2d at 195).

[122]   *Gobert*, 463 F.3d at 346 & n.20 (5th Cir. 2006) (citing *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle v. Gamble,* 429 U.S. 97, 107 (1976)).

Moreover, active treatment of an inmate's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.[123]  The Fifth Circuit has consistently held that medical records of sick calls, examinations, diagnoses, and medications may rebut allegations of deliberate indifference to serious medical needs.[124]  Prisoners are not entitled to "the best that money could buy" regarding medical treatment.[125]  Disagreement with a prescribed course of treatment similarly states no constitutional violation.[126]  Constitutionally adequate care does not ensure that an inmate will agree with every treatment decision rendered.[127]  Disagreements over treatment decisions constitute, at most, claims of malpractice appropriately addressed under state law.

## Conclusion & Request for Relief

For these reasons, Defendants Harris County and Sheriff Ed Gonzalez respectfully request the Court to grant this motion, to enter summary judgment in their favor on all of Plaintiffs' claims and all theories of recovery, and for such other and further relief, both

---

[123]     *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 195; *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991).

[124]     *Gobert,* 465 F.3d at 347 n. 24; *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995); *Mendoza,* 989 F.2d at 193-95.

[125]     *Mayweather v. Foti,* 958 F.2d 91, 91 (5th Cir. 1992).

[126]     *Gobert*, 463 F.3d at 346 (citing cases); *Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir. 2001); *Stewart,* 174 F.3d at 535; *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977).

[127]     *Estelle,* 429 U.S. at 107-108 (1976) (finding that a prison doctor's failure to order an x-ray of the plaintiff's lower back did not state an Eighth Amendment violation).

general and special, at law and at equity, to which Harris County and Sheriff Ed Gonzalez show themselves to be justly entitled.

Respectfully submitted,

**/s/ *Laura Beckman Hedge***

OF COUNSEL:                              LAURA BECKMAN HEDGE
                                         Assistant County Attorney
VINCE RYAN                               **Attorney-in-Charge**
HARRIS COUNTY ATTORNEY                   State Bar No. 00790288
                                         Federal ID No. 23243
                                         1019 Congress, 15th Floor
                                         Houston, Texas 77002
                                         Telephone:  (713) 274-5137
                                         Facsimile:  (713) 755-8924
                                         Laura.Hedge@cao.hctx.net

                                         **ATTORNEY FOR DEFENDANTS**
                                         **HARRIS COUNTY & SHERIFF ED**
                                         **GONZALEZ**

## **Certificate of Service**

I hereby certify that on August 24, 2018, a true and correct copy of the foregoing was served pursuant to the Federal Rules of Civil Procedure via the Court's CM/ECF system to:

Otha T. Carpenter
Attorney at Law
4606 FM 1960, Suite 400
Houston, Texas  77069

Michael A. Davenport
Davenport Law Office
4606 FM 1960, Suite 400
Houston, Texas  77069

Jimmie L. J. Brown, Jr.
965 Pinemont Drive, Suite 400
Houston, Texas  77018

*/s/ Laura Beckman Hedge*
LAURA BECKMAN HEDGE
Assistant County Attorney